# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LUIS ARNALDO BAEZ, <br> TDCJ No. 0193714, <br><br> Petitioner, <br><br> v. <br><br> LORIE DAVIS, Director, <br> Texas Department of Criminal Justice, <br> Correctional Institutions Division, <br><br> Respondent. | § § § § § § § § § § § § § § | CIVIL NO. SA-17-CA-0912-XR |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Luis Arnaldo Baez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Memorandum in Support and Supplement to Memorandum in Support (ECF Nos. 12 & 13), Respondent's Answer (ECF No. 19), and Petitioner's Reply (ECF No. 23).[1] Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

A grand jury indictment returned August 12, 2013, charged Petitioner with one count of continuous sexual abuse of a child naming "D.I." as the complainant and one count of continuous sexual abuse of a child naming "D.R." as the complainant. (ECF No. 20-1 at 4-8). Petitioner was also charged with twenty-one counts of aggravated sexual assault of a child and

---

[1] Petitioner has paid the applicable filing fee for this cause (ECF No. 1) and is represented by counsel in these proceedings.

seven counts of indecency with a child by contact, with "B.M." and "A.D." named as complainants. (ECF No. 20-1 at 16-18, 48). The State eventually waived prosecution on all charges other than continuous sexual assault of a child. (ECF No. 20-1 at 65; ECF No. 20-16 at 6-7).

On the day before Petitioner's trial, the trial court conducted a hearing pursuant to Texas Code of Criminal Procedure article 38.37.[2] (ECF No. 20-16 at 7-90). At the conclusion of the hearing, the court determined B.M.'s testimony was admissible and A.D.'s testimony was not admissible. (ECF No. 20-16 at 88-90).

The Fourth Court of Appeals summarized some of the testimony presented at Petitioner's trial as follows:

> At trial, Sylvia Perez testified D.I was placed in foster care in the home of appellant and his wife on a variety of dates, including December 28, 2006 through March 3, 2009; and March 10, 2009 through March 18, 2009. D.I. testified she was born on February 17, 1995. D.I. said the first time appellant touched her was in the middle of her sixth grade of school. She said appellant touched her "often," more than ten times, more than once a week, and the abuse continued until she moved out of his house.
>
> Annette Santos, the sexual assault nurse examiner, testified she examined D.I. when D.I. was fifteen years old. Santos said D.I. told her she went to appellant's home when she was about eight years old, and "[i]t started happening when I was 12 to 14," and the "last time [she] was 13 to 14 years old." D.I. described appellant putting his finger in her "private" and making her "suck his

---

[2] This rule provides:
>  Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Crim. Proc. Code Ann. art. 38.37(2)(b). Before such evidence is admitted, the trial judge must:
>  (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and
>  (2) conduct a hearing out of the presence of the jury for that purpose.

*Id.*

> private part." D.I. also told Santos appellant "put his private part in [her] front private."
>
> ***
>
> D.R. testified she lived in appellant's house for "a year and a half," but she later stated it was for sixteen months, and Perez testified D.R. was placed in foster care in appellant's home at the beginning of March 2007 and through 2009. Therefore, the jury could have reasonably inferred D.R. lived with appellant during the relevant time period. D.R. testified repeatedly that appellant had sex with her every single day and the entire time she lived in the house. On appeal, appellant takes issue with D.R.'s use of the word "sex," arguing the word is never defined and "did not involve specific acts of sexual abuse that were described by the prosecutor during her direct examination." Although D.R. said appellant had sex with her every single day, she was also more specific and graphic in her description of what appellant did to her and made her do to him. Also, at one point the State asked, "When you say having sex, are you talking about putting his private in your private?" and D.R. replied, "Yes." D.R. had previously said "his private part" meant appellant's penis and "her private part" meant vagina.

*Baez v. State*, 486 S.W.3d 592, 594-97 (Tex. App.—San Antonio 2015, pet. ref'd).

D.R. testified she was 13 years of age when she began living with Petitioner, and that she witnessed Petitioner abuse D.I. (ECF No. 20-18 at 63, 68-69, 78). She testified that Petitioner penetrated her and she bled afterward. (ECF No. 20-18 at 70-71, 79-80). B.M. testified she was three or four when Petitioner abused her by touching her "private" with his hands, his mouth, and his penis. (ECF No. 20-19 at 11-13). She testified Petitioner put his penis in her mouth and then ejaculated, and that she bit him. (ECF No. 20-19 at 17). She testified she did not know and had never spoken to D.R. or D.I. (ECF No. 20-19 at 25).

Petitioner's wife and daughter testified for the defense. (ECF No. 20-19 at 140-71, 172-205). Petitioner's daughter testified that D.I. "said that she would make up a story so that people would believe her and take me and my dad away. So that me and my dad could be away from my mother because she wants to live with my mom and just my mom." (ECF No. 20-19 at 157). The daughter testified D.I. said this "more than a thousand times." *Id.* The testimony that D.I. made

these statements was corroborated by Petitioner's wife. (ECF No. 20-19 at 181). Petitioner did not testify at his trial.

On April 14, 2014, the jury found Petitioner guilty on both counts of continuous sexual abuse of a child. (ECF No. 20-1 at 46-47). Petitioner elected to have the court impose punishment. After a hearing and preparation of a presentence investigation report, the trial court assessed punishment at consecutive terms of life imprisonment. (ECF No. 20-01 at 51-53; ECF No. 20-21; ECF No. 20-22 at 4-5).

Petitioner's conviction and sentence were affirmed on appeal, and the Texas Court of Criminal Appeals refused a petition for discretionary review. (ECF No. 20-13). The United States Supreme Court denied a petition for certiorari. *Baez v. Texas*, 137 S. Ct. 303 (2016). Petitioner did not seek a state writ of habeas corpus.

In his federal habeas petition, Petitioner asserts the trial court's jury instructions constituted structural error and violated Petitioner's Sixth Amendment and Due Process rights to a jury trial and to have all elements of the indicted offenses be proven beyond a reasonable doubt.

## II. Standard of Review

**A. Review of State Court Adjudications**

Petitioner's habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under section 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the

Supreme Court of the United States," or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). A state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). A state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407-09.

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion. *Richter*, 562 U.S. at 102. Instead, a petitioner must show the state court's decision was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim

5

previously adjudicated on the merits in state court, a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Analysis

Petitioner's counsel asserts section 2(b) of article 38.37 allows a jury to convict by considering evidence of uncharged conduct "as substitute evidence to convict," in violation of the constitutional requirement that "each charged offense be proven beyond a reasonable doubt." (ECF No. 1 at 1). Citing *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993), and *In re Winship*, 397 U.S. 358 (1970), Petitioner argues the jury charge in this matter, in conformity with section 2(b), constituted structural error. (ECF No. 1 at 1-2). Petitioner alleges the section 2(b) instruction "allowed the jury to convict Baez simply if . . . it believed that he committed extraneous acts of sexual abuse, such as those alleged by BM, exclusive of the beyond a reasonable doubt instruction." (ECF No. 23 at 2). He further contends that "armed with this weapon, at the Petitioner's trial, the prosecutor specifically argued in closing arguments that all the jury needed to convict the Petitioner of the charged offenses was evidence beyond a reasonable doubt that he committed extraneous, similar criminal acts." (ECF No. 1 at 1-2).

Petitioner raised this claim in his direct appeal. The Fourth Court of Appeals held the jury charge did not allow a conviction without a finding of guilt beyond a reasonable doubt. *Baez*, 486 S.W. 3d at 599. Citing *Sullivan* and *Winship* and quoting the jury instructions, the appellate court concluded:

> . . . the jury charge here properly informed the jury that the State had to prove the elements of each offense, the charge set forth those elements as to D.I. and D.R., and the jury was instructed it could vote to convict only if it determined, beyond a

> reasonable doubt, that appellant committed two or more of six specifically listed acts during the relevant time period as to D.I. and D.R. The complained-of instruction did nothing more than inform the jury that it could consider B.M.'s testimony for any bearing it had on relevant matters, including "the character of the defendant and such act, if any, performed in conformity with the character of the defendant, the state of mind of the defendant and each complainant, and the previous and subsequent relationship between the defendant and each complainant." Therefore, we conclude the inclusion of this instruction did not mis-direct the jury as to the State's burden of proof and did not amount to "structural" error for which no harm analysis is necessary. We also conclude the trial court did not err in including this instruction in the jury charge; therefore, we do not conduct a harm analysis.

*Id.* at 598-99.

The state court's resolution of this issue was not contrary to or an unreasonable application of *Sullivan* or *Winship*. To determine whether the language of a jury charge constitutes constitutional error, the Court must analyze whether the instructions relieved the State of its burden to prove each element of the crime beyond a reasonable doubt; relieving the State of this burden violates the principles set forth in *Winship*. *See Francis v. Franklin*, 471 U.S. 307, 313 (1985). An improper jury charge is generally subject to harmless error review; however, an instruction that improperly allows the jury to find a defendant guilty without establishing their guilt beyond a reasonable doubt is structural error. *Sullivan*, 508 U.S. at 281 (eschewing harmless error analysis because "[t]here being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless"). When deciding whether jury instructions fall into the class of instructions prohibited by *Sullivan*, the Court must examine the instructions as a whole, to determine whether the instructions correctly conveyed the concept of reasonable doubt on each element of the crime. *See Victor v. Nebraska*, 511 U.S. 1, 5, 22-23 (1994).

Petitioner contends the jury was instructed it could convict based "solely" on the testimony of B.M. The constitutional question in this case, therefore, is whether there is a "reasonable likelihood" the jury understood the instructions to permit a conviction based upon lesser proof than the beyond-a-reasonable-doubt-standard demands. *Victor*, 511 U.S. at 6; *Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991); *Franklin*, 471 U.S. at 309.

A thorough review of the trial transcript, the pleadings in Petitioner's appeal, the state appellate court's decision, and the pleadings in this habeas action, indicate the state court's decision denying this claim was not an unreasonable application of *Winship* or *Sullivan*. The jury was properly instructed that it had to find, beyond a reasonable doubt, that Petitioner committed the specific acts alleged with regard to D.I. and D.R. before it could find Petitioner guilty as charged. (ECF No. 20-1 at 29-37). The jury was also instructed it must find B.M.'s allegations true beyond a reasonable doubt before it could use B.M.'s testimony as evidence that Petitioner committed the specific acts alleged with regard to D.I. and D.R. in conformity with his character. (ECF No. 20-1 at 38). The jury was properly instructed on the State's burden of proof and what facts it was required to find beyond a reasonable doubt to convict. (ECF No. 20-1 at 29-37, 43-44). Juries are presumed to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and there is no indication in the record that this jury did not follow their instructions. A plain reading of the actual jury instructions renders Petitioner's argument, that the jury was instructed such that it could find Petitioner guilty of abusing D.I. and D.R. solely on the testimony of B.M., without merit.

Petitioner also asserts the jury was improperly instructed because, during closing argument, the prosecutor stated:

> And when you believe beyond a reasonable doubt that [B.M.] is telling you the truth, when you believe he sexually assaulted [B.M.], you can then say because he sexually assaulted B.M., he sexually [assaulted D.R.] and he sexually assaulted [D.I.]. You can say he acted in conformity with his character. He sexually assaulted her; he sexually assaulted those two [D.I. and D.R.]. That is how you use [B.M.'s] testimony.

(ECF No. 12 at 10, quoting ECF No. 20-20 at 26).

However, the jury was instructed that arguments of counsel for the State and for the defense are not evidence, (ECF No. 20-1 at 43), and juries are presumed to follow their instructions from the trial court. *Richardson*, 481 U.S. at 211.

Additionally, the prosecutor also stated:

> Ladies and gentlemen, there is more than enough evidence for you to believe beyond a reasonable doubt that he did this to [D.I.], [D.R.], and [B.M.].
>
> ***
>
> . . . Where there is smoke there is fire. You can say, I know he did it to [B.M.], I know he did it to [D.R.], and I know he did it to [D.I.]. We have given you enough evidence. We have proven this case to you beyond a reasonable doubt.

(ECF No. 20-20 at 47). Accordingly, the Court concludes that the prosecutor's statements did not misdirect the jury as to how it could use B.M.'s testimony, and the prosecutor's statements did not convince or mislead the jury to believe it could find Petitioner guilty as charged based solely on B.M.'s testimony.

Because the state court's application of the law to the facts in this matter was not an unreasonable application of *Sullivan* and *Winship*, Petitioner is not entitled to federal habeas relief on the sole issue stated in his petition.

9

## IV. Certificate of Appealability

The Court next determines whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA sua sponte without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes reasonable jurists would not debate the conclusion that Mr. Baez is not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

Petitioner has failed to establish the state court's denial of his claim regarding the jury instructions was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented in his state court proceedings.

Accordingly, based on the foregoing reasons,

**IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and petitioner Luis Baez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 petition (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. Motions pending, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

SIGNED this 29th day of May, 2018.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE